CLERK'S OFFICE U.S. DIST. COURT
AT DANVILLE, VA
FILED
MAR 3 1 2006
JOHN F. CORCORAN, CLERK
BY: 
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| DAVID AMBERGER, # 258204, ) | |
| Plaintiff, ) | Civil Action No. 7:06-cv-00162 |
| ) | |
| v. ) | **MEMORANDUM OPINION** |
| ) | |
| VIRGINIA DEPARTMENT OF ) | |
| CORRECTIONS, et al., ) | By: Hon. Jackson L. Kiser |
| Defendants. ) | Senior United States District Judge |

Plaintiff David Amberger, # 258204, a Virginia inmate proceeding pro se, brings this action under the Civil Rights Act, 42 U.S.C. § 1983, with jurisdiction vested under 28 U.S.C. § 1343. In his complaint, Amberger alleges that the defendants have failed to provide him with a healthy environment in which to serve his term of incarceration. Upon review of the record, I conclude that the plaintiff has not stated a claim upon which relief can be granted and, therefore, dismiss the complaint without prejudice, pursuant to 28 U.S.C. § 1915A(b)(1).

I. **Allegations and Claims**

Amberger alleges that since July 14, 1998, he has been exposed to an unreasonable amount of environmental tobacco smoke ("ETS"). Specifically, Amberger alleges that on July 14, 1998, he was transferred to the Deep Meadows Receiving Center and was exposed to ETS as a result of inmates failing to comply with the institutional tobacco policy within the dorms, from inmates smoking directly in front of building entrances, and from inmates smoking in the outdoor recreation yard. On October 8, 1998, Amberger was transferred to the Augusta Correctional Center. He was initially assigned to a cell in a smoking unit and his cell mate was a smoker. However, Amberger promptly requested to be transferred to a non-smoking unit, was

immediately put on the waiting list for a non-smoking unit, and four months later was transferred to a non-smoking unit. Thereafter, he was only exposed to ETS while on the outdoor recreation yard.

On November 9, 2000, Amberger was transferred to the Bland Correction Center. Plaintiff was assigned to a non-smoking dorm, but claims he was still exposed to ETS because inmates did not fully comply with institutional smoking policies. Then, on June 5, 2002, Amberger was moved to a progressive housing unit. During that period he was housed with many other non-smokers and was placed on a waiting list for a single man cell. In December, 2003, Amberger was moved to a single man cell in another progressive housing unit. Amberger claims that some inmates smoked in this unit, thus in efforts to limit his exposure to ETS he was unable to enjoy many of the privileges that smoking inmates enjoyed. However, Amberger admits that the institutional policy limited smoking to the day rooms of the progressive housing unit, most inmates complied with this progressive housing unit smoking policy, and that there were numerous ventilation fans within the unit to circulate fresh air.[1] But, Amberger claims that on October 29, 2003, the ventilation exhaust fan was turned off for one night, and he was forced to seek medical attention the following day.

On January 1, 2004, Amberger admits that the Warden posted a memorandum which detailed institutional measures undertaken to reduce ETS in the progressive housing unit which would become effective April 26, 2004. Those measures included the installation of exhaust fans in the day rooms and the additional prohibition of smoking in the dormitory sleeping areas.

---

[1] Amberger claims that this policy was reiterated to inmates and staff following his complaints regarding the fact that inmates were smoking in the restrooms and hallways of the progressive housing unit.

However, plaintiff alleges that "he determined" that the changes were not sufficient to accommodate his desire to be completely free of any exposure to ETS. Thereafter, plaintiff alleges that he continued to complain about the ETS he was exposed to and made requests to be transferred to a smoke free facility. Plaintiff also has proposed numerous changes to the Bland Correctional Center which he believes would limit his exposure to ETS, such as a smoke free progressive housing wing. However, to date, none of his requests have been approved. Then, on January 1, 2006, plaintiff requested to be transferred from the progressive housing unit to a non-smoking dorm. On January 4, 2006, plaintiff was moved back to a non-smoking dorm. However, he claims that he is still exposed to an unreasonable amount of ETS because correctional officers smoke in the vestibule area outside of the dorm and that smoke is being drawn into the non-smoking unit by ventilation fans and that one of the day rooms in an adjacent smoking dorm does not always have an exhaust fan running, thus smoke from that room is pulled into the non-smoking sleeping area.

## II.   Analysis

A petition may be dismissed under 28 U.S.C. § 1915A(b)(1) if it is clear from the petition that the plaintiff is not entitled to relief. To state a cause of action under § 1983, a plaintiff must establish that he was deprived of rights guaranteed by the Constitution or laws of the United States and that this deprivation resulted from conduct committed by a person acting under color of state law. See West v. Atkins, 487 U.S. 42 (1988).

### A. Statue of Limitations

No federal statute of limitations applies in §1983 actions. Wilson v. Garcia, 471 U.S. 261, 266 (1985). Accordingly, §1983 actions are governed by the state statute of limitations applicable for general personal injury cases in the state where the alleged violations occur. Owens v. Okure, 488 U.S. 235, 239-40 (1989). As Virginia has a two-year statute of limitations for general, personal injury claims, a plaintiff bringing a civil rights action under §1983 in Virginia must do so within two years from the time when his action accrues. Va. Code Ann. §8.01-243(a).

However, the time of accrual of a cause of action under §1983 is a federal question. Nasim v. Warden, Md. House of Correction, 64 F.3d 951, 955 (4th Cir. 1995)(en banc). In Nasim, the United States Court of Appeals for the Fourth Circuit held that a cause of action under §1983 accrues and the statute of limitations begins running "when the plaintiff possesses sufficient facts about the harm done to him that reasonable inquiry will reveal his cause of action." Id. An inmate's §1983 action is commenced for purposes of the statute of limitations as soon as he delivers his complaint to prison authorities for mailing. Lewis v. Richmond City Police Depot, 947 F.2d 733 (4th Cir. 1991). In Virginia §1983 cases, then, if an inmate has not delivered his complaint to prison officials for mailing within the two year period following the time when he knew or had reason to know of his alleged injury, that inmate is barred by the Virginia statute of limitations from bringing suit.

As Amberger admits he was immediately aware of his exposure to ETS in July, 1998, I find that Amberger had sufficient knowledge of his cause of action related to ETS from that date forward. However, as Amberger alleges he continues to suffer from exposure to excessive

amounts of ETS, I find that any allegations of exposure within the two year statutory period from the filing of the instant complaint, are timely. As Amberger filed the instant complaint on March 16, 2006, any claims related to events or exposure which occurred prior to March 16, 2004, are time barred and, thus, are hereby dismissed pursuant to 28 U.S.C. § 1915A(b)(1).

### B. ETS Exposure

The only claim which the court need consider is Amberger's allegation that he has been exposed to an unreasonable amount of ETS from March, 2004 to the present. Amberger claims that in March, 2004, he was assigned to a single man cell in the progressive housing unit. Amberger claims that some inmates within the progressive housing unit smoked in the unit, thereby exposing him to ETS. However, he admits that inmates were prohibited from smoking in the hallways and restrooms of the progressive housing unit and in April, 2004, the institution installed exhaust fans in the unit day rooms to reduce ETS and instituted an additional prohibition of smoking in the dormitory sleeping areas. Although plaintiff alleges that "he determined" that the progressive housing unit policy prohibiting smoking in the hallways, restrooms, and sleeping areas and the installation of ventilation and exhaust fans throughout the unit were insufficient to adequately limit exposure to ETS, he does not claim that inmates failed to comply with the policy or that the fans failed to function. Additionally, plaintiff admits that on January 1, 2006, he requested to be transferred from the progressive housing unit to a non-smoking dorm, and, three days later, he was moved. Nonetheless, plaintiff claims that he is still exposed to an unreasonable amount of ETS because correctional officers smoke in the vestibule area outside of the dorm and that smoke is being drawn into the non-smoking unit by ventilation

fans and that one of the day rooms in an adjacent smoking dorm does not always have an exhaust fan running, thus smoke from that room is pulled into the non-smoking sleeping area.

While the Eighth Amendment does protect prisoners from cruel and unusual living conditions, an inmate is not entitled to relief simply because of exposure to uncomfortable, restrictive, or inconvenient conditions of confinement, for, "[t]o the extent that such conditions are restrictive or even harsh, they are part of the penalty that criminal offenders pay for their offenses against society." Rhodes v. Chapman, 452 U.S. 337, 347 (1981). As a result, in order to state a claim of constitutional significance regarding prison conditions related to ETS, a plaintiff must demonstrate that due to the exposure he has sustained a serious or significant mental or physical injury and that prison officials were deliberately indifferent to such health threats. Wilson v. Seiter, 501 U.S. 294 (1991); Strickler v. Waters, 989 F.2d 1375, 1380-1381 (4th Cir. 1993). Furthermore, to prove an Eighth Amendment violation based on a serious risk of future harm related to exposure to ETS, a plaintiff must show that he was exposed to unreasonably high levels of ETS, that modern society will not tolerate any exposure to this risk, and that prison officials were deliberately indifferent to this risk. Helling v. McKinney, 509 U.S. 25, 35-36 (1993).

Although limited exposure to ETS while in the progressive housing unit may have been inconvenient and unfortunate, Amberger has not demonstrated that, because of those conditions, he has sustained a serious or significant injury. Moreover, Amberger has not alleged that he has suffered any physical ailment as a result of the limited ETS to which he has been exposed.

Furthermore, Amberger has failed to allege facts which suggest that he is at risk of future harm related to his limited exposure to ETS. In Helling, the court found that a prisoner who had

fans and that one of the day rooms in an adjacent smoking dorm does not always have an exhaust fan running, thus smoke from that room is pulled into the non-smoking sleeping area.

While the Eighth Amendment does protect prisoners from cruel and unusual living conditions, an inmate is not entitled to relief simply because of exposure to uncomfortable, restrictive, or inconvenient conditions of confinement, for, "[t]o the extent that such conditions are restrictive or even harsh, they are part of the penalty that criminal offenders pay for their offenses against society." Rhodes v. Chapman, 452 U.S. 337, 347 (1981). As a result, in order to state a claim of constitutional significance regarding prison conditions related to ETS, a plaintiff must demonstrate that due to the exposure he has sustained a serious or significant mental or physical injury and that prison officials were deliberately indifferent to such health threats. Wilson v. Seiter, 501 U.S. 294 (1991); Strickler v. Waters, 989 F.2d 1375, 1380-1381 (4th Cir. 1993). Furthermore, to prove an Eighth Amendment violation based on a serious risk of future harm related to exposure to ETS, a plaintiff must show that he was exposed to unreasonably high levels of ETS, that modern society will not tolerate any exposure to this risk, and that prison officials were deliberately indifferent to this risk. Helling v. McKinney, 509 U.S. 25, 35-36 (1993).

Although limited exposure to ETS while in the progressive housing unit may have been inconvenient and unfortunate, Amberger has not demonstrated that, because of those conditions, he has sustained a serious or significant injury. Moreover, Amberger has not alleged that he has suffered any physical ailment as a result of the limited ETS to which he has been exposed.

Furthermore, Amberger has failed to allege facts which suggest that he is at risk of future harm related to his limited exposure to ETS. In Helling, the court found that a prisoner who had

previously been celled with a "five-pack-a-day" smoker, was not subject to a serious risk of future harm related to any exposure to high levels of ETS while housed in that cell because his exposure was not prolonged and he had since been transferred to another cell. Id. at 36. Here, Amberger admits that while incarcerated in the progressive housing unit, he was housed in a single man cell, inmates were specifically prohibited from smoking in the restrooms, hallways, and sleeping areas of the unit, and ventilation and exhaust fans were installed and ran without interruption to limit ETS. Further, Amberger admits that he is currently housed in a non-smoking unit and that the only ETS he is exposed to is limited to what smoke may enter the unit from a designated smoking area, outside his assigned dorm. Amberger does not allege that he has been forced to share a cell with a smoker, much less one who smoked five packs a day, nor that he has he been exposed to similarly extreme level of ETS while in the progressive housing unit or now in the non-smoking unit. Accordingly, I find that Amberger cannot establish that he is at future risk of harm due to the limited ETS to which he has been exposed. See Id.

Additionally, even if Amberger could establish that he faced some future risk of harm due to ETS, he has not presented any evidence which establishes that prison officials ignored his plight. Amberger admits that following his complaints regarding inmates' failure to comply with the progressive housing unit smoking policy, prison officials reiterated the policy regarding the prohibition of smoking in the sleeping areas, hallways, and restrooms, and that, thereafter, inmates complied with that policy. He further admits prison officials installed ventilation and exhaust fans to reduce ETS in the progressive housing unit. Also, Amberger admits that three days after his request to be moved to a smoke free unit, he was moved. Accordingly, it is apparent that prison officials acted promptly to reduce ETS in the progressive housing unit and

transfer Amberger to a non-smoking pod from that unit when Amberger indicated that he felt he was still exposed to an excessive amount of ETS. Thus, it is clear that prison officials were not deliberately indifferent to Amberger's concerns regarding ETS. Therefore, I find that Amberger's claims related to exposure to ETS from March, 2004 to the present, must be dismissed for failure to state a claim upon which relief may be granted.

### III. Conclusion

Based on the foregoing, I find that Amberger has not presented any claims that constitute a violation of his constitutional rights. Therefore, I dismiss the complaint without prejudice pursuant to 28 U.S.C. § 1915A(b)(1).

The plaintiff is advised that he may appeal this decision pursuant to Rules 3 and 4 of the Federal Rules of Appellate Procedure by filing a notice of appeal with this court within 30 days of the date of entry of this Order, or within such extended period as the court may grant pursuant to Rule 4(a)(5).

The Clerk is directed to send certified copies of this memorandum opinion and accompanying order to plaintiff and to counsel of record for the defendants, if known.

**ENTER**: This 31st day of March, 2006.

*Jackson L. Kiser*
Senior United States District Judge